IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**JOE V.L. PERRAULT,**

                Petitioner,

     v.                                      CASE NO. 03-3069-RDR

**MARK LARKIN, et al.,**

                Respondents.

**O R D E R**

This matter is before the court on a petition for habeas corpus filed pursuant to 28 U.S.C. 2241. Petitioner commenced this action while incarcerated in the Reno County Jail, Hutchinson, Kansas. He proceeds pro se and in forma pauperis.

**Background**

These uncontested facts are adopted from the Answer and Return filed in this matter.

Petitioner is a native of Canada. He has a long criminal history in Canada, and a history of criminal conduct in the United States that began with his conviction in North Dakota of burglary in 1987.

In December 1988, petitioner was convicted in the United States District Court for the District of North Dakota of illegal entry into the United States in violation of 8 U.S.C. 1325(a).

He was sentenced to a term of 30 days unless sooner deported to Canada.

On May 20, 1995, petitioner was refused admission to the United States by the Immigration Inspector at Portal, North Dakota, due to his conviction of crimes involving moral turpitude.  See 8 U.S.C. 1182(a)(2)(A)(i)(I) and (a)(2)(B). Petitioner did not assert any claim to an exemption at that time.

Despite this refusal of admission, petitioner entered the United States,[1] and he was convicted in South Dakota in 1999 of felony grand theft.  He was sentenced to 4 years in state custody.  In April 2000, petitioner was convicted in Kansas of felony theft, burglary, and misdemeanor theft.  He received a 31-month sentence for these convictions.

In February 2001, the Wichita, Kansas, office of the Immigration and Naturalization Service filed a detainer with the El Dorado Correctional Facility.  Petitioner was released to that detainer on November 22, 2002.

Special Agent Mark Larkin, a respondent in this action, interviewed petitioner concerning his immigration status. Petitioner admitted that he entered the United States illegally; however, he asserted dual citizenship and claimed to be a member of the Cree Indian Tribe of Regina, Saskatchewan, Canada.  Agent

---

[1] The circumstances of petitioner's entry into the United States are unknown.

Larkin made inquiry of the Canadian Consulate, but a check of the Cree Tribe registration did not show that petitioner registered as a tribal member.

In November 2002, the INS issued a Notice of Intent to Issue a Final Administrative Removal Order pursuant to 8 U.S.C. 1228(b).  The INS sought petitioner's removal pursuant to 8 U.S.C. 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony, as defined in 8 U.S.C. 1101(a)(43)(G).

In January 2003, the INS Assistant District Director for Deportation ordered petitioner's removal.  The Canadian Consulate General issued a travel document for petitioner's return in March 2003, and petitioner was removed to Canada by the INS on April 16, 2003.

## Discussion

Petitioner claims his detention by the INS was unlawful under the Constitution and treaties between the United States and American Indians.

The right of American Indians born in Canada to move freely between Canada and the United States was codified by Article III of the Jay Treaty, entered between Great Britain and the United States in 1794:

> It is agreed that it shall at all times be free to his majesty's subjects, and to the citizens of the United States, and also to the Indians dwelling on either side of the said boundary line, freely to pass and repass by land or inland navigation, into the respective territories and countries of the two parties, on the

continent of America (the country within the limits of the Hudson's Bay Company only excepted.) McCandless v. United States ex rel. Diabo, 25 F.2d 71 (3d Cir. 1928)(internal quotation marks omitted).

The right was reiterated in the Treaty of Ghent of 1814, and prior to 1924, Canadian-born American Indians were allowed to cross the United States-Canadian border without regulation.

Following the passage of the Immigration Act of 1924, Congress took action to clarify that the right remained intact by providing in the Act of April 2, 1928, 45 Stat. 401, "[t]hat the Immigration Act of 1924 shall not be construed to apply to the right of American Indians born in Canada to pass the borders of the United States...." Matter of Yellowquill, 16 I. & N. Dec. 576, 577, 1978 WL 36470 (BIA 1978).

In the current Act, the term "American Indian born in Canada" is limited to "only persons possessing 50 per centum or more of the blood of the American Indian race." 8 C.F.R. 289.1. An American Indian born in Canada who can satisfy that standard is regarded as a lawful permanent resident of the United States. 8 C.F.R. 289.2.

Under federal statute, petitioner may avail himself of the right of free passage only if he demonstrates that he possesses "at least 50 per centum of blood of the American Indian race." 8 U.S.C. 1359. See United States v. Curnew, 788 F.2d 1335 (8th Cir. 1986)(whether Canadian-born alien identifies himself or is viewed by others as American Indian insufficient to satisfy

statute; instead, individual must produce evidence from which finder of fact reasonably can conclude alien possesses at least 50 per centum of American Indian blood).

As respondents point out, petitioner has made no showing that he has the requisite standing.  Efforts by the INS to verify petitioner's membership in the Cree Tribe were unsuccessful, and petitioner has not come forward with any evidence to support his claim.  Accordingly, the court concludes petitioner's claim that he is exempt from removal as an American Indian born in Canada must be rejected.

IT IS THEREFORE ORDERED the petition for habeas corpus is dismissed and all relief is denied.

Copies of this order shall be transmitted to the parties.

**IT IS SO ORDERED.**

DATED:  This 5th day of October, 2005, at Topeka, Kansas.

              S/ Richard D. Rogers
              RICHARD D. ROGERS
              United States District Judge